## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **ERIK ROZELL #209189** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:05-V-510-F |
| | ) |
| **WILLIE THOMAS et. al.** | ) |
| | ) |
| Defendants. | ) |

RECEIVED
2005 AUG 29 P 4:27

### SPECIAL REPORT

Come now the Defendants Willie Thomas, William Hughes, Willie Copeland and Jerry Richards, by and through the Office of the Attorney General – State of Alabama, and in accordance with this Honorable Court's Order dated June 29, 2005 hereby submit the following Special Report:

### PARTIES

1. The Plaintiff, Erik Rozell, is an Alabama Department of Corrections inmate, who is incarcerated in the Holman Correctional Facility in Atmore, Alabama. Inmate Rozell was formerly incarcerated at Staton Correctional Facility in Elmore, Alabama.

2. The Defendant, Willie Thomas was formerly employed as a Correctional Warden III with the Alabama Department of Corrections at Staton Correctional Facility in Elmore, Alabama. Defendant Thomas is currently employed as a Warden III with the Elmore Correctional Facility in Elmore, Alabama.

3. The Defendant, Willie Copeland is employed as a Correctional Officer Supervisor I with the Alabama Department of Corrections at Staton Correctional Facility in Elmore, Alabama.

4. The Defendant, Jerry Richards is employed as a Correctional Officer I with the Alabama Department of Corrections at Staton Correctional Facility in Elmore, Alabama.

5. The Defendant, William Hughes is employed as a Correctional Officer I with the Alabama Department of Corrections at Staton Correctional Facility in Elmore, Alabama.

## PLAINTIFF'S ALLEGATIONS AND DEMANDS

The Plaintiff alleges that on August 12, 2004, while he was incarcerated at Staton Correctional Facility, he got into a fight with another inmate. The Plaintiff maintains that when he was escorted to the shift commander's office for questioning that Defendant Copeland allegedly subjected him to the use of excessive force when he kneed the Plaintiff in the crotch and struck his head with a fist. Defendant Richards allegedly assisted his supervisor by restraining the Plaintiff's arm against the wall. The Plaintiff also alleges that the Defendants retaliated against him and issued a false disciplinary and unlawfully transferred him from Staton prison.

As relief, the Plaintiff seeks for the Defendants to pay $10,000 for his compensatory damages, and $10,000 in monetary damages. The Plaintiff also seeks a

declaratory judgment and injunctive relief against the Defendants. The Plaintiff also wants to be transferred back to a level four institution. The Plaintiff demands a jury trial.

## DEFENDANTS' EXHIBITS

1. Exhibit 1- -Certified copies of Incident Report #SCF-04-0778 and Disciplinary Report #SCF-04-0778 and Emergency Treatment Record dated August 12, 2004

2. Exhibit 2- Affidavit of Defendant Willie Copeland

3. Exhibit 3-Affidavit of Defendant Jerry Richards

4. Exhibit 4-Affidavit of Defendant Willie Thomas

5. Exhibit 5- Affidavit of Defendant William Hughes

6. Exhibit 6- Certified copies of Incident Report #SCC-04-0950; Inmate Rozell's Detention Notification dated September 21, 2004; Disciplinary Report #SCF-04-0950; Emergency Treatment Record dated September 21, 2004; Inmate Rozell's Cell Block Inspection Sheet dated September 21, 2004.

The attached affidavits serve as a Rule 26 initial disclosure.

## DEFENDANTS' RESPONSE

1. The Defendants deny that they used excessive force against the Plaintiff during his incarceration at Staton Correctional Facility.

2. The Defendants deny that they retaliated against the Plaintiff during his incarceration at Staton Correctional Facility.

3. The Defendants deny that they deprived the Plaintiff of any of his constitutional rights.

4. The Defendants assert that the Plaintiff has failed to articulate any claims under the Eighth Amendment in order to entitle him to any relief.

5. The Defendants assert the defenses of sovereign and qualified immunity.

6. The Defendants assert that the Plaintiff is not entitled to damages, costs, injunctive relief or any other relief.

## STATEMENT OF FACTS

The facts surrounding the events in question are set out in detail in the affidavits of the Defendants, and other documentation submitted herein as Defendants' exhibits. After a review of the evidence, this Honorable Court should find that the Defendants have not violated the Plaintiff's constitutional rights during his incarceration at Staton Correctional Facility.

On August 12, 2004, around 9:10 a.m., the Plaintiff and another inmate, Lee Boswell was involved in a physical altercation in the prison barbershop. An officer escorted the inmates to Defendant Copeland's office. The officer reported that he did not see the inmates engaged in a fight but he noticed blood on inmate Boswell's shirt. Defendant Copeland questioned the inmates about the incident. The Plaintiff admitted that he had hit the other inmate because Boswell had disrespected him by bumping into him without apologizing and had closed the door in his face at the barbershop. Boswell denied the Plaintiff's version of events. Defendant Copeland informed the Plaintiff that he would get a disciplinary for a rule violation, #31 Assault on Another Inmate. (See Defendants' Exhibits 1-4)

Defendant Copeland sent a page for an available rover to report to the Shift Commander's office. Defendant Richards responded to the call. Defendant Richards and another officer escorted the Plaintiff and inmate Boswell to the Health Care Unit. At

9:22 a.m., the nurse examined the Plaintiff and noted that there were not any injuries to his upper or lower extremities. The nurse released the Plaintiff at 9:26a.m.to DOC officials. (See Defendants' Exhibits 1-4)

On August 12, 2004, Defendant Copeland charged the Plaintiff with rule violation #31, Assault on Another Inmate. The Plaintiff signed and acknowledged receipt of the charge. On August 18, 2004, a disciplinary hearing was held on the Plaintiff's charge. The Plaintiff pled not guilty to the charge. The Plaintiff did not make a verbal or written statement to the Hearing officer. Defendant Copeland testified at the proceedings. At the conclusion of the evidence, the Hearing officer found the Plaintiff guilty of rule violation #31, and recommended that the Plaintiff lose 45 days of canteen, phone and visitation privileges. The Hearing officer also recommended that the Plaintiff get sent for reclassification. On August 19, 2004, Defendant Thomas disapproved the Plaintiff's disciplinary because of a due process violation. (See Defendants' Exhibits 1-4)

On September 21, 2004, Defendant Hughes was assigned as the second shift rover at the prison. Around 2:10 p.m., a reliable confidential informant notified the officer that the Plaintiff had said that he would run a piece of steel through Defendant Copeland's head the next morning. Defendant Hughes notified the second shift supervisor about the incident. Thereafter, Warden Forniss was contacted to discuss the matter and he agreed with Lt. Browning's recommendation to put the Plaintiff in the Holding Tank. Defendant Hughes inventoried the Plaintiff's personal property and escorted him to the Health Care Unit for a medical examination. The medical examination showed that the Plaintiff did not have any physical injuries to his body prior to his placement in the Holding Tank.

Defendant Hughes served a Detention Notification on the Plaintiff. On September 23, 2004, Defendant Hughes initiated disciplinary action against the Plaintiff for a violation of Rule #44-Threats. (See Defendants' Exhibits 5-6)

On September 30, 2004, around 7:30 p.m., the Plaintiff's disciplinary proceedings were held in the Shift office. Defendant Hughes testified that he received information from a confidential informant with first-hand knowledge that the Plaintiff had threatened to run a piece of steel through Defendant Copeland's head by the next morning. Defendant Hughes further testified that this informant had proven reliable in the past. The Plaintiff testified that he was trying to get to Hall #1 and an officer would not let him go. Lt. Browning told the Plaintiff to return to his dorm. Within a few minutes, the Plaintiff said that he was called to the Shift office and told that he was under investigation and going to lock-up for making threats against Defendant Copeland. At the conclusion of the evidence, the Hearing officer found the Plaintiff guilty and recommended disciplinary segregation for 21 days and loss of privileges for 60 days. The Hearing officer also recommended that the Plaintiff be referred to classification for review and transfer. On October 14, 2004, the Plaintiff's punishment was approved. (See Defendants' Exhibit 5-6).

## ARGUMENT OF FACT AND LAW

**1.     The Plaintiff has failed to state a claim of excessive force pursuant to 42 U.S.C. § 1983 against the Defendants.**

The Plaintiff contends that the Defendants violated his rights under the Eighth Amendment of the Constitution. As stated earlier, the Plaintiff maintains that when he

was escorted to the shift commander's office for questioning that Defendant Copeland allegedly subjected him to the use of excessive force when he kneed the Plaintiff in the crotch and struck his head with a fist. Defendant Richards allegedly assisted his supervisor by restraining the Plaintiff's arm against the wall. The Plaintiff also alleges that the Defendants retaliated against him and issued a false disciplinary and unlawfully transferred him from Staton prison. The Plaintiff's frivolous allegations are due to be denied.

To sustain a claim under 42 U.S.C. § 1983, the Plaintiff must allege that he has been deprived or suffered the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law. 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). The Supreme Court has defined "acting under color of state law" as acting with power possessed by virtue of the defendant's employment with the state. *West v. Atkins,* 487 U.S. 42, 49 (1988). While state employment is generally sufficient to render the defendant a state actor, the dispositive issue is whether the official was acting pursuant to the power he possessed by state authority or acting only as a private individual. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1522 (11th Cir. 1995).

The Defendants maintain that they did not use excessive force against the Plaintiff in violation of his Eighth Amendment rights. Claims of excessive force against inmates are governed by the Eighth Amendment's proscription of cruel and unusual punishment. *Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth Amendment claim of excessive force, the plaintiff must prove that "'force was applied ... maliciously and sadistically for the very purpose of causing harm.'" *Id.,*

quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.E.2d 251 (1986). The "core judicial inquiry" in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed. 2d 156 (1992).

> In addition to defining the mental state required, Hudson and Whitley outline five distinct factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of the injury"; (2) the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them."

*Campbell*, 169 F. 3d at 1375, citing *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7.

Further, the *Hudson* court held that an excessive force claim "necessarily excludes from constitutional recognition *de minmus* uses of physical force, provided that the use of force is not a sort repugnant to the conscience of mankind." *Hudson*, supra at 9-10, quoting *Whitley*, supra at 327. Although the *Hudson* court did not define "*de minimus* use of force", it suggested that the degree of injury received is at least relevant to determining whether more than *de minimus* force was used. *Id.* at 10.

Under the facts of this case, on August 12, 2004, around 9:10 a.m., the Plaintiff and another inmate, Lee Boswell were involved in a physical altercation in the prison barbershop. An officer escorted the inmates to Defendant Copeland's office. The officer reported that he did not see the inmates engaged in a fight but he noticed blood on inmate Boswell's shirt. Defendant Copeland questioned the inmates about the incident. The Plaintiff admitted that he had hit the other inmate because Boswell had disrespected him by bumping into him without apologizing and had closed the door in his face at the

barbershop. Boswell denied the Plaintiff's version of events. Defendant Copeland informed the Plaintiff that he would get a disciplinary for a rule violation, #31 Assault on Another Inmate. (See Defendants' Exhibits 1-4)

Defendant Copeland sent a page for an available rover to report to the Shift Commander's office. Defendant Richards responded to the call. Defendant Richards and another officer escorted the Plaintiff and inmate Boswell to the Health Care Unit. At 9:22 a.m., the nurse examined the Plaintiff and noted that there were not any injuries to his upper or lower extremities. The nurse released the Plaintiff at 9:26a.m. to DOC officials. (See Defendants' Exhibits 1-4)

On August 12, 2004, Defendant Copeland charged the Plaintiff with rule violation #31, Assault on Another Inmate. The Plaintiff signed and acknowledged receipt of the charge. On August 18, 2004, a disciplinary hearing was held on the Plaintiff's charge. The Plaintiff pled not guilty to the charge. The Plaintiff did not make a verbal or written statement to the Hearing officer. Defendant Copeland testified at the proceedings. At the conclusion of the evidence, the Hearing officer found the Plaintiff guilty of rule violation #31, and recommended that the Plaintiff lose 45 days of canteen, phone and visitation privileges. The Hearing officer also recommended that the Plaintiff get sent for reclassification. On August 19, 2004, Defendant Thomas disapproved the Plaintiff's disciplinary because of a due process violation. (See Defendants' Exhibits 1-4)

Here, it is clear that the Defendants did not use excessive force against inmate Rozell because: (1) The medical examination showed that inmate Rozell did not have any injuries to his upper or lower extremities. (2-4) Inmate Rozell admitted that he had hit another inmate about an earlier confrontation when he was in the barbershop. (5) The

Defendants had reason to believe that the Plaintiff's hostile and aggressive demeanor would escalate if they did not intervene to calm him down.

Other than inmate Rozell's bare allegations, there is insufficient evidence to show that the Defendants harmed him at Staton prison. The attached documentation reflects that the Plaintiff had fought with another inmate which led to the investigation at the Shift office. After the fight was over, the Plaintiff was restrained without handcuffs and questioned by Defendant Copeland, and then he was escorted without incident to the Health Care Unit for a body chart. Further, Defendant Thomas stated that the entire incident was thoroughly reviewed by the DOC Investigation and Intelligence Division. The results of the investigation concluded that there was no validity to inmate Rozell's allegations against Defendant Copeland. (See Defendant's Exhibits 1-4).

Additionally, the Plaintiff's claims that the Defendants retaliated and issued a false disciplinary action against him which led to his transfer to another institution are meritless. These unfounded claims are also due to be dismissed.

On September 21, 2004, Defendant Hughes was assigned as the second shift rover at the prison. Around 2:10 p.m., a reliable confidential informant notified the officer that the Plaintiff had said that he would run a piece of steel through Defendant Copeland's head the next morning. Defendant Hughes notified the second shift supervisor about the incident. Thereafter, Warden Forniss was contacted to discuss the matter and he agreed with Lt. Browning's recommendation to put the Plaintiff in the Holding Tank. Defendant Hughes inventoried the Plaintiff's personal property and escorted him to the Health Care Unit for a medical examination. The medical examination showed that the Plaintiff did not have any physical injuries to his body prior to his placement in the Holding Tank.

Defendant Hughes served a Detention Notification on the Plaintiff. On September 23, 2004, Defendant Hughes initiated disciplinary action against the Plaintiff for a violation of Rule #44-Threats. (See Defendants' Exhibits 5-6)

On September 30, 2004, around 7:30 p.m., the Plaintiff's disciplinary proceedings were held in the Shift office. Defendant Hughes testified that he received information from a confidential informant with first-hand knowledge that the Plaintiff had threatened to run a piece of steel through Defendant Copeland's head by the next morning. Defendant Hughes further testified that this informant had proven reliable in the past. The Plaintiff testified that he was trying to get to Hall #1 and an officer would not let him go. Lt. Browning told the Plaintiff to return to his dorm. Within a few minutes, the Plaintiff said that he was called to the Shift office and told that he was under investigation and going to lock-up for making threats against Defendant Copeland. At the conclusion of the evidence, the Hearing officer found the Plaintiff guilty and recommended disciplinary segregation for 21 days and loss of privileges for 60 days. The Hearing officer also recommended that the Plaintiff be referred to classification for review and transfer. On October 14, 2004, the Plaintiff's punishment was approved. (See Defendants' Exhibit 5-6).

Clearly, the record reflects that the Defendants were justified for their actions when they responded to the Plaintiff's threats to do bodily harm to Defendant Copeland. In the instant action, the Defendants have not engaged in any acts against the Plaintiff that would invoke 42 U.S.C §1983 liability. The Plaintiff cannot rest on "general conclusory allegations or "broad truisms to show that a right is clearly established." *Kelly v. Curtis*, 21 F.3d 1544, 1549 (11th Cir. 1994). "Instead the plaintiff must show

that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.*

Here, the Plaintiff has not demonstrated that the Defendants alleged acted in violation of his constitutional rights. The facts demonstrate that the Defendants took the necessary action to detain the Plaintiff after he had made verbal threats to do bodily harm to Defendant Copeland based on safety and security concerns for Defendant Copeland and others at the prison. The Plaintiff's bare and conclusory allegations of the Defendants' alleged wrongdoing are insufficient to establish retaliation or any other constitutional violation. For this reason, the Plaintiff's claim is due to be denied.

Because the Plaintiff cannot prove that the Defendants violated his Eighth Amendment rights or any other constitutional rights, this Court should enter a summary judgment in their favor. Accordingly, the Plaintiff's claim is due to be denied.

### 2. The Defendants are immune from damages liability to the Plaintiff.

The Defendants are immune from the Plaintiff's claims based on the defense of sovereign and qualified immunity. The Plaintiff seeks monetary damages against the Defendants. To the extent that the Defendants are sued in their official capacities, they are immune from liability.

### A. Eleventh Amendment immunity

The Eleventh Amendment bars suits against a State in Federal Court, unless the State's immunity has either been waived by the State or abrogated by Congress in a valid exercise of its authority. When Congress enacted 42 U.S.C. § 1983, it did not intend to abrogate immunities "well grounded in history and reason." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001). The Supreme Court has explained that certain immunities were so well established at the time 42 U.S.C. § 1983 was enacted in 1871 that it assumed "Congress would have specifically so provided had it wished to abolish" them. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). An Eleventh Amendment immunity defense is jurisdictional. *Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974).

The Supreme Court has stated:

> "There can be no doubt ... that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.'"

*Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Defendants are state employees, and, to the extent that they are sued in their official capacities, the suit against them is in effect a suit against the State. In addition, Alabama has not consented to be sued or waived its immunity in this case. Therefore, as state actors, the Defendants are immunized under the Eleventh Amendment from the Plaintiff's complaint. Thus, to the

extent that the Defendants are sued in their official capacities, they are absolutely immune from liability.

### B. Qualified immunity

The Defendants also are protected by the defense of qualified immunity from the Plaintiff's claim. A defendant is entitled to qualified immunity from § 1983 suits if he was acting in his capacity as a state official and he did not violate "clearly established statutory law or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 122 S.Ct. 2508, 2511 (2002). A constitutional right is considered clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 2515; *Willingham v. Loughnan*, 321 F.3d 1299 (11th Cir. 2003).

Further, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blakenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). Because the alleged acts of the Defendants consisted of discretionary functions and their actions did not violate any of the Plaintiff's clearly established constitutional or statutory rights, the Defendants are protected by qualified immunity. *Wilson, supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity).

The Eleventh Circuit has also held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment

are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson*, 163 F.3d at 1295. Here, the Defendants properly carried out their duties and sought to preserve internal order, discipline and institutional security at the prison when inmate Rozell became hostile and fought with another inmate at the prison. The Defendants deny that they assaulted the Plaintiff during the investigation of the altercation. (See Defendants' Exhibit 1-4) Further, the Defendants did not retaliate against the Plaintiff when he was disciplined after he threatened to seriously harm to Defendant Copeland and later transferred to another institution. Thus, the Defendants are entitled to qualified immunity because they did not use excessive force and did not retaliate against the Plaintiff in violation of his rights.

3. **The Plaintiff's request for declaratory and injunctive relief is moot.**

The Plaintiff is no longer incarcerated at the Staton Correctional Facility. (See Plaintiff's complaint) His alleged claims for declaratory relief refer to the time of his incarceration at that institution. However, these claims are now moot since the Plaintiff has been transferred to another correctional facility. *McKinnon v. Talladega County*, 745 F.2d 1360 (11th Cir. 1984).

## CONCLUSION

The Defendants' evidence proves that the Plaintiff's claims are without merit. The Plaintiff has not produced sufficient evidence of his claims to support a jury verdict in his favor. In addition, the Defendants are entitled to sovereign and qualified immunity in regards to the Plaintiff's suit for liability and damages.

WHEREFORE, the above-cited facts and law considered, the Defendants request that a summary judgment be entered in their favor.

        Respectfully submitted,
        TROY KING (KIN 047)
        ATTORNEY GENERAL
        BY:

        _____
        LAVETTE LYAS-BROWN (LYA 001)
        ASSISTANT ATTORNEY GENERAL
        COUNSEL FOR THE DEFENDANTS

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery AL 36130
334-242-7443
334-242-2433 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of August, 2005, that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and that I served a true and correct copy of the foregoing has been forwarded by U.S. First Class Mail, postage prepaid and properly addressed to:

    Erik Rozell # 209189
    Holman Correctional Facility
    Holman 3700
    Atmore, AL 36503-3700

        _____
        LAVETTE LYAS-BROWN
        ASSISTANT ATTORNEY GENERAL